FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 27  PM 4: 58

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NORMAN DEAN                                             CIVIL ACTION

VERSUS                                                 NO. 05-1454

CHARLES C. FOTI, JR.  ET AL.                           SECTION "T" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Norman Dean, is a convicted prisoner currently incarcerated in the Washington Correctional Institution in Angie, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against former Orleans Parish Criminal Sheriff Charles C. Foti, Jr. and unidentified sheriff's deputies.  He alleges that while incarcerated in the Orleans Parish Prison system ("OPP") in October 2004, he was injured when other inmates stabbed him in the back with a broken mop handle, and that he was not provided with adequate medical care for the resulting injuries. He seeks compensatory damages and injunctive relief.  Record Doc. No. 1 (Complaint at ¶ V).

On June 2, 2005, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Craig Frosch, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he is currently incarcerated based on a conviction on February 5, 2004, for burglary, purse-snatching and unauthorized entry into an inhabited dwelling. He testified that he is serving a seven-year prison sentence. He stated that his claims in this case arise from an incident that occurred on October 19, 2004, while he was being housed in OPP after his conviction.

Dean confirmed that he asserts three kinds of claims in this case, including that sheriff's deputies failed to protect him from an attack by other inmates, that the attack was the result of defendants' negligence, and that he did not receive proper medical care for injuries he suffered in the attack.

Plaintiff testified that on the day of the attack he was being transferred from one dormitory to a new dormitory at OPP. He stated that as soon as he entered the new dormitory, Dorm H in the Templeman III facility of OPP, he was stabbed from behind by two inmates whose names he does not know. He stated that he never learned their names  "because as soon as I got stabbed they had to rush me to the hospital."

2

Dean said that although he did not know the names of his attackers, he knew that they were members of a gang called "the Ninth Ward" and that one of them was nicknamed "Project." Asked if he knew why these other inmates stabbed him, Dean testified that "him and my cousin had problems. . . and he found out that was my cousin, so when I came in the dorm he went to stabbing me before I could even get the deputy's attention." Although he said the attackers stabbed him because they had a past problem with his cousin, Dean did not know specifically what that problem was.  He said his cousin's name is Arvell Romas and that Dean himself had <u>not</u> had a problem with these gang members before the incident.  He stated that he was attacked as soon as he walked into the new dorm and as soon as the security guard had left after escorting him to the new dorm.

Dean reiterated that he had <u>not</u> personally had problems with the attackers in the past and he was not aware of any particular problem between the attackers and his cousin.  He conceded that the attack came without any kind of warning.  Dean did not know the name of the deputy who had escorted him to his new dorm and stated that the deputy did <u>not</u> know and had no reason to suspect that the attack would occur.  He speculated that the attack must have occurred because "something really bad must have happened between him (the inmate attacker) and my cousin and he wanted to get me because he could never get my cousin."

3

Dean said the attackers stabbed him with a mop stick and broke the mop stick when he was stabbed in the back. He stated that an inch-and-a-half piece of the stick remained in his back for 14 days. He testified that the attack occurred about 5:15 p.m., and the attackers approached him from behind and stabbed him in the back. Dean said he had to wait about an hour and a half until roll call at 6:45 p.m. before help could arrive, because the microphone on the intercom system in the dorm for inmates to call security was broken. He testified that during that hour and a half he stayed in the tier representative's cell because he was afraid he might be jumped again.

Dean testified that when security arrived at about 6:45 p.m., he was transported to the medical department at the jail, and an internal security deputy at the jail, whose job it was to investigate this kind of incident, took pictures of Dean's back and head. Dean said his attackers had also hit him three times in the head with a knife, but the head injuries were not bad. He said the stabbing with the mop stick was the worst injury he suffered in the attack.

Dean testified that he blames sheriff's deputies for his attack by the other inmates because they were negligent in leaving cleaning materials unattended in the dorm, and a mop was used as a weapon to attack him. He said the deputies are "supposed to take the mops and stuff off the tier, out the dormitory, after they finish using them, but they never do. They keep them in the dormitory underneath the stairway." Dean said that was

4

negligence and that the deputies should have taken the mops away after the inmates were finished using them.

Asked if his attackers had attacked anybody else in that dorm, Dean said, "I don't think so."  He confirmed that he does <u>not</u> allege that the deputies left the mops in the dormitory purposefully so that the other inmates could attack him.

As to his medical care, Dean testified that he had received and reviewed the medical records previously ordered, Record Doc. No. 9, and although some of the records were not his but instead belonged to another inmate named Dean, the records that related to him were accurate.   He confirmed the notations in the medical records indicating that he received some initial treatment for his injuries after the incident in the medical department at the jail and that he was subsequently transported to Charity Hospital. Dean stated that in the jail medical department his mouth was stitched because he had been stabbed in the mouth during the attack. He said he told the doctor at the jail that there was a piece of stick in his back "but he didn't believe me, so he felt my back and said it was some kind of nerve damage." He said the jailhouse doctor just stitched his mouth.

Dean confirmed the reference in the doctor's notes that he also had superficial lacerations on his back and that the doctor looked at his back but said it was some kind

of nerve problem. He also confirmed that the doctor prescribed augmentin and Motrin and put three dressing patches on the wounds on his back, forehead and lip.

Dean said he learned that the piece of stick in his back was an inch and a half long when it was finally removed from his back at Earl K. Long Hospital in Baton Rouge after he was transferred from OPP to a state Department of Corrections ("DOC") facility on November 2, 2004, about two weeks after the incident. He confirmed that his right hand was x-rayed as part of his medical treatment at OPP because his hand was swollen from the attack, but it was not broken.

Dean testified that he was taken to Charity Hospital two days after the attack, but that the visit was for a dislocated shoulder that was <u>not</u> an injury suffered in the attack. Dean said he told the doctor at Charity Hospital about the piece of stick in his back from the stabbing, and the doctor x-rayed it, but x-rayed the wrong side of his back and did not see the stick in the x-ray. He said the doctor at Charity Hospital looked at the stab wound in his back but did nothing.

Plaintiff testified that his back was properly treated only after he was transferred from OPP to the DOC facility on October 25, 2004. He stated that he remained in OPP for only six days after the attack, in a different dorm than the one in which he had been attacked. He said that during that six days, he received medication and his bandages were changed, but the piece of stick in his back was not removed.

6

Dean said that after he was transferred from OPP to the DOC facility, he was given a CAT scan, and the doctor recognized that a piece of stick remained in his back. He testified that the doctor gave him medication and scheduled him to be taken to Earl K. Long Hospital in Baton Rouge. He stated that the piece of stick was removed from his back at the hospital on November 2, 2004, during a one-hour procedure. Dean testified that his back is healing and the only continuing problem he experiences is some itching in the area of his back wound.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

7

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

8

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a

claim of violation of his federal constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

## II.   FAILURE TO PROTECT

Dean alleges that prison officials failed to protect him from attack by other inmates. At the time of the attack, Dean was a convicted inmate, so that the Eighth Amendment standard applies.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834.

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia,

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the

11

> County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S.
> 397, 117 S. Ct. 1382, 1391 (1997).  The deliberate indifference standard
> permits courts to separate omissions that "amount to an intentional choice"
> from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations

omitted) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is

the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.  Whether a

prison official had the requisite knowledge of a substantial risk is a question of fact.

Farmer, 511 U.S. at 837; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

> [If a] plaintiff presents evidence showing that a substantial risk of inmate
> attacks was longstanding, pervasive, well-documented, or expressly noted
> by prison officials in the past, and the circumstances suggest that the
> defendant-official being sued had been exposed to information concerning
> the risk and thus "must have known" about it, then such evidence could be
> sufficient to permit a trier of fact to find that the defendant-official had
> actual knowledge of the risk.

Farmer, 511 U.S. at 842-43.  Thus, in Adames v. Perez, 331 F.3d 508 (5th Cir. 2003),

the United States Court of Appeals for the Fifth Circuit recently vacated and remanded

a jury verdict in favor of an inmate, holding that evidence of isolated previous attacks

was insufficient to show deliberate indifference to an inmate's safety or to support a

jury's verdict that prison officials failed to protect the inmate.

In this case, plaintiff's testimony clearly establishes that defendants were not

deliberately indifferent to a serious risk of harm under the federal constitutional

standards because his own testimony confirms that neither Dean nor the guards had any reason to believe or even suspect that the inmates posed any danger to Dean before the attack. Dean testified that he had not personally had any problems with the attackers in the past. He did not believe that the attackers had attacked other inmates. He stated that he was attacked as soon as he walked into the new dorm and as soon as the security guard had left after escorting him to the new dorm. He conceded that the attack came suddenly and without warning "before [he] could even get the deputy's attention" and that the deputy did not know and had no reason to suspect that the attack might occur.

Because prison officials (and even Dean himself) had no reason to suspect that Dean was about to be attacked, prison officials cannot be liable for failing to protect him because no finding of deliberate indifference required to state a constitutional claim is possible. Accordingly, plaintiff's Section 1983 claim of failure to protect from harm by other inmates must be dismissed.

III.    MERE NEGLIGENCE

Plaintiff's allegations that sheriff's deputies are responsible for the attack by other inmates because they left cleaning materials unattended in the dorm and a mop was used as a weapon to attack him, assert negligence claims at best, not claims of civil rights violations cognizable under Section 1983. In his own testimony, plaintiff characterized

the deputies' alleged fault as negligence. As a matter of law, claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328 (1986); accord Davidson v. Cannon, 474 U.S. 344, 347 (1986). In a number of contexts, the Fifth Circuit has determined that allegations amounting to negligence cannot support a Section 1983 claim. Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence is insufficient to support a failure to protect claim under Section 1983); Eason v. Thaler, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care).

Dean's allegations concerning defendants' alleged negligence in leaving a mop in the dorm that was later used to attack him do not amount to a violation of constitutional

rights. Defendants cannot be liable under Section 1983 for injuries resulting from alleged acts of negligence. If plaintiff seeks relief for defendants' alleged negligence, he must do so in state court by asserting state law tort claims, not Section 1983 constitutional violations. 28 U.S.C. § 1367(c)(3) and (d).

IV.    MEDICAL CARE

The Farmer test outlined above for Eighth Amendment failure to protect claims likewise applies to Eighth Amendment medical claims. In Estelle, 429 U.S. at 104, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. The Fifth Circuit has reiterated in Hare, 74 F.3d 633, that the deliberate indifference standard applies to convicted prisoners like Dean.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

15

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 114 S. Ct. at 1979 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

In this case, plaintiff's allegations negate any inference that defendants acted with deliberate indifference to plaintiff's serious medical needs. Initially, it cannot be concluded that the conditions he described presented a serious medical need that posed a substantial risk of harm during his incarceration at OPP. Dean's complaints that a small piece of stick was left in his back for about two weeks after the attack do not rise to the level of a serious medical need for purposes of constitutional analysis. See Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating tooth ache and ear infection not sufficiently serious); Griffin v. DeRobertis, 557 F.Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); Banks v. Mannoia, 890 F.Supp. 95, 99 (N.D.N.Y. 1995) ("'bowel problems'" and headaches not considered a serious medical problem); cf. Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is a serious medical need, but no deliberate

indifference existed when plaintiff was examined by physician and received prescription medication).

Even assuming that plaintiff's medical condition was serious, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention while incarcerated in OPP. Plaintiff testified that he was seen by a doctor about an hour and a half after the incident, and the doctor examined him and provided him with treatment for his injuries, including stitching his mouth. Medications, including augmentin and Motrin, were prescribed for him and the wounds on his back, forehead and lip were dressed. Plaintiff testified that he was transported to Charity Hospital, where he received x-rays. During the six days after the attack in which plaintiff remained in OPP before his transfer, plaintiff received medication and his bandages were changed. Dean testified that the piece of stick was removed about two weeks after the incident, and his back is now healing and the only continuing problem he experiences is some itching in the area of his back wound. To the extent plaintiff may allege a delay in being provided with medical care, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

17

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 302. The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case at this time.

Second, while it is clear from plaintiff's allegations and testimony that he is not satisfied with the speed, quality or effectiveness of his medical care at OPP, it is equally clear that the medical care provided was reasonable, prompt and constitutionally adequate. Certainly, no finding of deliberate indifference to his medical needs can be

made based on this record, which includes examination by medical personnel, x-rays and the provision of medication for his complaints.

Contentions like Dean's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citing Mendoza, 989 F.2d at 193) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if the treatment was negligently administered, and a prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care fail to state a claim for violation of his constitutional rights at this time sufficient to obtain relief under Section 1983.

V.   IMPROPER DEFENDANT

Dean named Sheriff Foti as a defendant concerning the claims asserted in this case. Dean makes no claim that the sheriff was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996). Thus, Sheriff Foti cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in the sheriff's employ. Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983). To hold the sheriff liable, plaintiff must establish either that he "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the sheriff] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981). In the instant action, plaintiff has failed to establish either of these two criteria.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1) and that his state law negligence claims be **DISMISSED WITHOUT PREJUDICE**

20

pursuant to 28 U.S.C. § 1367(c), so that he may pursue them in state court if he desires to do so.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this **27th** day of June, 2005.


_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE